UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORIGIA
ATLANTA DIVISION

| | |
|---|---|
| LASHAWNDA WILLIAMS,  ) | |
| ) | |
|   Plaintiff,  ) | |
| ) | |
| v.  ) | Civil Action File No.: |
| ) | |
| EMORY UNIVERISTY  ) | |
| ) | JURY TRIAL DEMANDED |
|   Defendant.  ) | |

## COMPLAINT

Plaintiff **LaShawnda Williams** brings this complaint for relief and damages against Defendant **Emory University,** based on the following factual allegations and causes of action.

## NATURE OF THE ACTION

1. This action to correct unlawful employment practices by Emory University, ("Emory" or "Defendant"), arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C.A.§ 12112 (a).

2. Plaintiff Lashawnda Williams ("Ms. Williams" or "Plaintiff") alleges that Emory unlawfully (i) interfered with her rights under the ADA; (ii) failed to accommodate her ADA-qualifying disability under the ADA; (iii) retaliated against her by refusing to accommodate her disability after she engaged in protected activity

1

by complaining to human resources that her supervisor's hostile treatment toward her led to serious medical conditions necessitating leave; and (iv) discriminated against her when it removed her from her position while on medical leave for her disability.

3. To address Emory's unlawful conduct, Ms. Williams seeks economic damages of back pay, front pay, lost benefits; compensatory damages for emotional distress and mental anguish; as well as her attorneys' fees and costs of litigation.

## THE PARTIES

4. Ms. Williams at all times relevant to this complaint was employed by Emory in Atlanta, Georgia.

5. At all times relevant to this complaint, Ms. Williams was an individual with an ADA-qualifying disability in the form of significant physical and mental health impairments that affected her cognitive and neurological functions, and who could have performed her job with the reasonable accommodation of a remote work schedule and/or temporary leave. 42 U.S.C.A. §§ 12102(1)(A), 12112(b)(5)(A).

6. Emory is a non-profit educational institution.

## PERSONAL JURISDICTION

7. Emory is subject to service at the location of its registered agent, Amy Adelman, at Emory University, 201 Dowman Drive, 312 Administration Building, Atlanta, GA, 30322, USA.

## SUBJECT-MATTER JURISDICTION AND VENUE

8. Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

9. Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in this district and division and the acts or omissions giving rise to the claim occurred in the same venue.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Ms. Williams filed a charge of discrimination and retaliation against Emory with the Equal Employment Opportunity Commission ("EEOC") on April 18, 2024, Charge No. 410-2024–07084. A copy is attached as Exhibit A.

11. Ms. Williams received a right-to-sue letter on March 7, 2025. A copy is attached as Exhibit B.

12. Ms. Williams timely files her ADA claims.

## FACTUAL ALLEGATIONS

13. Ms. Williams was hired by Emory on or about May 31, 2022, as a Facilities Planning Manager in Emory's Winship Cancer Institute ("Emory Winship").

14. In 2023, Ms. Williams began to encounter hostility from her immediate supervisor Rebecca Doolittle.

15. Ms. Doolittle regularly spoke to Ms. Williams in a derogatory manner, and she consistently criticized her work performance.

15. Ms. Williams suffered humiliation, stress, loss of sleep, and anxiety, amongst other ailments, as a result of Ms. Doolittle's verbal abuse towards her.

16. Ms. Doolittle's hostile treatment toward Ms. Williams continued, resulting in the exacerbation of Ms. Williams's physical and mental health symptoms and condition(s), including significant stress and anxiety, which led Ms. Williams to apply for FMLA leave.

17. Ms. Williams was approved for continuous FMLA leave to begin on June 12, 2023.

18. On June 23, 2023, while out on FMLA leave, Ms. Williams lodged an internal complaint with human resources ("HR") regarding the hostile treatment she was subjected to by Ms. Doolittle, specifically informing Emory that as a result of Ms. Doolittle's hostile treatment towards her, she suffered significant physical and mental health ailments. In the same complaint, Ms. Williams requested that HR facilitate her transfer to a different department.

19. Emory did not attempt to transfer Ms. Williams to a different department after her complaint.

20. Soon after sending her complaint to HR, Ms. Williams's condition worsened and her doctor extended her medical leave, first with an updated return to work date of September 4, 2023, and then with a return-to-work date of September

18, 2023.

21. On August 28, 2023, more than two months after Ms. Williams complained to Emory that Ms. Doolittle's hostile treatment toward her caused her to experience significant health issues that ultimately necessitated her taking FMLA leave, Emory's HR Employee Relations Director, Ms. Porscha Smith-Godwin, informed Ms. Williams that Emory was not going to update her on the status of her HR complaint until she returned to work from leave.

22. On September 18, 2023, Emory advised Ms. Williams that her available FMLA leave was exhausted on September 5, 2023, and that she would be put on non-FLMA medical leave, effective September 6, 2023.

23. On September 29, 2023, due to Ms. Williams's severe and chronic anxiety, which included symptoms of cognitive and neurological dysfunction affecting her ability to perform basic life functions, Ms. Williams's doctor extended her leave again, with a return to work date of October 2, 2023; however, this time, Ms. Williams's doctor included a request for Ms. Williams to return to work on October 4, 2023, in a remote capacity for six weeks as a reasonable accommodation.

24. On October 2, 2023, Ms. Andrea Goolsby, Emory Winship's Senior Director of Human Resources, sent Ms. Williams a link to submit her accommodation request to its Department of Accessibility Services.

25. On October 4, 2023, Ms. Williams informed Emory, including Ms. Goolsby, that she was waiting for her doctor to complete the necessary form and requested to work remotely pending Emory's decision on her accommodation request.

26. In response, Ms. Goolsby informed Ms. Williams that the Department was trying to confirm certain information about her work tasks before they could make a determination.

27. On October 6, 2023, Ms. Williams sent an email to Emory outlining her ability to perform 99% of her job functions remotely for six weeks and that her only in-person tasks would include meeting a vendor, which was not a daily or weekly task. She further reiterated that an on-site team member could assist with that rare task if needed.

28. Ms. Williams also knew that her direct report was in place to support her role and was on-site daily.

29. On October 12, 2023, despite being in possession of all of Ms. Williams's medical certifications, Ms. Joelle Butler, who works in Emory's Department of Accessibility Services, reached out to Ms. Williams to ask her why she really needed medical leave.

30. On October 16, 2023, before communicating any decision to Ms. Williams regarding the approval or denial of her requested accommodation, Ms. Goolsby told Ms. Williams that she could apply for a job via open recruitment if the

department does not hold her role open.

31. On October 17, 2023, while still waiting on Emory's determination regarding her accommodation request, Ms. Williams proposed a progressive on-site return to work schedule for the six-week accommodation period, which provided for one day on-site for the first two weeks, three days on-site for weeks three and four, and four days on-site for weeks five and six, with her returning to on-site work five days a week at the conclusion of those six weeks.

32. Still waiting for Emory's decision on whether it would approve her request for the reasonable accommodation of a hybrid work schedule, Ms. Williams was told she would be participating in a planning call with her supervisor, Ms. Doolittle, and Ms. Doolittle's supervisor, Ms. Finesha Colton-Lee, about the department's upcoming projects and how it could incorporate Ms. Williams's proposed progressive on-site return to work schedule; however, this call never happened.

33. On October 20, 2023, Ms. Williams received Ms. Goolsby's response rejecting her suggested progressive on-site return to work plan and instead providing that Ms. Williams could work two half-days for the first two weeks but all remote work for all subsequent weeks would be subject to her supervisor's approval – the very same supervisor who Ms. Williams lodged a complaint about – Ms. Doolittle.

34. Ms. Goolsby's response further directed Ms. Williams to attend all relevant in-person team meetings and to actively participate in those meetings; it did

not include any proposal for Ms. Williams to be able to attend team meetings virtually unless the team meeting was virtual for everyone.

35. Ms. Williams responded with questions to gain clarification on why she could not work one full day on-site instead of two half days on-site. Additionally, she expressed concern regarding the uncertainty of her schedule after the first two weeks of Emory's proposed plan.

36. After attending a doctor's appointment on October 23, 2023, related to her increased stress and anxiety levels resulting from Emory's denial of her accommodation, Ms. Williams's doctor extended her medical leave to December 4, 2023, citing the same chronic anxiety and mood affects that exacerbated her cognitive and neurological functions.

37. On November 20, 2023, Emory Winship's Human Resources Sr. Associate Pamela Somerset informed Ms. Williams that Emory approved her leave extension request, but Emory will no longer hold her position open.

38. Ms. Williams was informed that she could apply for additional non-FMLA leave if her doctor provides additional medical documentation by January 4, 2024.

39. On January 3, 2024, Ms. Williams's doctor faxed the updated medical documentation to Emory; however, it needed to be amended, and the amended form was sent to Emory on January 9, 2024.

40. Nevertheless, Emory sent Ms. Williams's a Separation Agreement, stating the reason for her termination as "unable to return from leave."

41. Emory did not hold Ms. Williams's position for her, and it informed Ms. Williams that when she is cleared to return to work, she can apply for available positions within the enterprise.

## CAUSE OF ACTION

## COUNT I

**(Disability discrimination under the Americans with Disabilities Act, 42 U.S.C.A. § 12112(a))**

42. Plaintiff LaShawnda Williams incorporates by reference the preceding paragraphs of this complaint as though set forth fully and separately herein.

43. Defendant is a covered entity under the ADA, 42 U.S.C.A. § 12111.

44. Plaintiff at all times relevant to this complaint was a person with an ADA-qualifying disability, in that she suffered from severe anxiety with cognitive and neurological dysfunction that substantially limited her ability to sleep and perform work.

45. Defendant's removal of Plaintiff from her position during her temporary medical leave reflected discrimination based on her disability.

46. As a result of Defendant's disability-based discrimination, Plaintiff has suffered various damages, including but not limited to loss of back pay; front pay; and noneconomic compensatory damages related to mental anguish, emotional

distress, humiliation, embarrassment, and reputational stigma. Plaintiff has also been made to bear the costs of litigation and attorneys' fees.

47. Defendant's unlawful conduct was undertaken willfully, with deliberate indifference to Plaintiff's right to be free from discrimination based on her disability.

## COUNT II

### (Failure to accommodate under the Americans with Disabilities Act, 42 U.S.C.A. § 12112 et seq.)

48. Plaintiff LaShawnda Williams incorporates by reference the preceding paragraphs of this complaint as though set forth fully and separately within.

49. Plaintiff at all times relevant to this complaint was an individual with a disability, in that she was diagnosed with severe anxiety with cognitive and neurological dysfunction, which substantially limited her ability to sleep and perform work.

50. Defendant failed to provide reasonable accommodations to Plaintiff, who it knew had a disability and who could have performed the essential functions of her job with said accommodations.

51. Defendant did not demonstrate that Plaintiff's requested accommodations would impose an undue hardship on the operations of its business.

52. Defendants failed to engage in an interactive process regarding

accommodating Plaintiff's disability.

53. Defendant's failure to provide reasonable accommodations to Plaintiff and its failure to engage in an interactive process regarding said accommodations constitutes unlawful discrimination under the ADA.

54. Defendant's unlawful discrimination based on Plaintiff's disability has inflicted various damages on Plaintiff, including but not limited to (1) loss of back pay, front pay, and benefits, including health insurance and accumulation of retirement contributions; and (2) compensatory damages related to mental anguish, emotional distress, humiliation, embarrassment, and reputational stigma. Plaintiff has also been made to bear the costs of litigation and attorneys' fees.

55. Defendant's unlawful conduct was undertaken willfully, with deliberate indifference to Plaintiff's right to be free from discrimination based on her disability.

## COUNT III

**(Interference under the Americans with Disabilities Act, 42 U.S.C.A. § 12203(b))**

56. Plaintiff LaShawnda Williams incorporates by reference the preceding paragraphs of this complaint as though set forth fully and separately herein.

57. By removing Plaintiff from her position while on medical leave, and requiring her to reapply for employment, Defendant interfered with Plaintiff's exercise of her rights under the ADA.

58. As a result of Defendant's interference with her ADA protected rights, Plaintiff has suffered various damages, including but not limited to loss of back pay; front pay; and noneconomic compensatory damages related to mental anguish, emotional distress, humiliation, embarrassment, and reputational stigma. Plaintiff has also been made to bear the costs of litigation and attorneys' fees.

59. Defendant's unlawful conduct was undertaken willfully, with deliberate indifference to Plaintiff's right to be free from discrimination based on her disability.

## COUNT IV

**(Retaliation under the Americans with Disabilities Act, 42 U.S.C.A. § 12203(a))**

60. Plaintiff LaShawnda Williams incorporates by reference the preceding paragraphs of this complaint as though set forth fully and separately herein.

61. Plaintiff at all times relevant to this complaint was an individual with a disability, in that she was diagnosed with severe anxiety with cognitive and neurological dysfunction, which substantially limited her ability to sleep and perform work.

62. Plaintiff engaged in protected activity under the ADA in that she complained to Defendant that her supervisor's hostile treatment toward her caused her significant stress and anxiety, resulting in depression, lack of sleep, and lack of focus.

63. Defendant retaliated against Plaintiff by failing to engage in the interactive process, by denying her reasonable accommodations, and by removing her from her position while she was on approved medical leave.

64. Defendant's retaliatory conduct has inflicted various damages on Plaintiff, including but not limited to (1) loss of back pay, front pay, and benefits, including health insurance and accumulation of retirement contributions, and (2) compensatory damages related to mental anguish, emotional distress, humiliation, embarrassment, and reputational stigma. Plaintiff has also been made to bear the costs of litigation and attorneys' fees

65. Defendant's unlawful conduct was undertaken willfully, with deliberate indifference to Plaintiff's right to be free from retaliation for exercising her statutory rights and opposing discrimination based on disability.

## PRAYER FOR RELIEF

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

    A. Back pay, front pay, and lost benefits.

    B. Compensatory damages to the extent allowed by law under the ADA.

    C. Attorneys' fees and costs of litigation.

    D. Pre-judgment and post-judgment interest at the highest lawful rate.

    E. Such other equitable and monetary relief as the court deems just and

proper.

F. A declaratory judgment that Defendant's actions violated Plaintiff's statutory rights and that Defendant shall refrain from future unlawful discriminatory and retaliatory conduct in its employment practices.

Respectfully submitted the 5th day of June, 2025.

**HKM Employment Attorneys LLP**

*s/ Jerilyn E. Gardner*
Jerilyn E. Gardner
Georgia Bar No. 139779
3344 Peachtree Rd. NE, Suite 800
Office #35
Atlanta, GA 30326
Direct: 404-446-9544
jgardner@hkm.com

**Counsel for Plaintiff LaShawnda Williams**